IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| WESCO INSURANCE COMPANY, | |
| Plaintiff, | |
| v. | Civil Action No.: |
| ROBERT WALSH ASSOCIATES, LLC, ROBERT WALSH, and SAMY BOUTROS, | |
| Defendants. | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Wesco Insurance Company ("Wesco"), by and through its counsel, and for its Complaint for Declaratory Judgment against the Defendants, Robert Walsh Associates, LLC ("RWA"), Robert Walsh ("Walsh"), and Samy Boutros ("Boutros"), alleges as follows:

## NATURE OF THE ACTION

1. Wesco seeks a declaration under 28 U.S.C. § 2201 that it does not owe a duty to defend or indemnify RWA or Walsh (collectively, the "Walsh Defendants"), under a policy of insurance issued to RWA as the named insured, in connection with a lawsuit filed by Boutros, individually and as the Administrator Ad Prosequendum of the Estate of Nadia Assad, in the Superior Court of New Jersey, case no. HUD-L-1913-16 (the "Underlying Lawsuit").

## THE PARTIES

2. Wesco is a Delaware corporation with its principal place of business in New York.

3. On information and belief, RWA is a limited liability company. On information and belief, Walsh is the sole member of RWA.

4. On information and belief, Walsh is a citizen of New Jersey.

5. On information and belief, Boutros is a citizen of New Jersey. Boutros is named as a party herein because he may be a party in interest to the existence of insurance proceeds. Wesco seeks no relief from Boutros other than to bind it to the outcome of this insurance coverage dispute.

## STATEMENT OF JURISDICTION AND VENUE

6. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Wesco and the Defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs. Upon information and belief, the Underlying Lawsuit seeks damages from the Walsh Defendants in an amount in excess of $75,000. In addition to the damages sought, Wesco is also being asked to provide a defense to the Walsh Defendants.

7. Venue is proper pursuant to 28 U.S.C. § 1391 as a substantial part of the events giving rise to this litigation occurred in this judicial district.

## FACTUAL BACKGROUND

### A. Pre-Litigation Correspondence to Walsh Defendants

8. On May 2, 2016, Kirk Bennett, Architect/Engineer of the USPS – Facilities – Repair & Alterations Team East sent an email to Walsh. (A copy of the May 2, 2016 email is attached as Exhibit A.)

9. Walsh received the May 2, 2016 email from Kirk Bennett.

10. The May 2, 2016 email stated that "[t]here appears to be omissions in your employee parking lot design at Kearny DVD P&DC." The email required that Walsh and/or RWA review highlighted excerpts from the 2015 Building Design Standards, as well as the design criteria used.

11. The May 2, 2016 email required that Walsh and/or RWA "[p]rovide design of any omissions related to employee lot safety (Signs, pavement markings…..) at no cost to the USPS and send to Smith Sondy to propose." The email also stated that there was a "fatality in the employee parking lot due to a driver running over a pedestrian that has evoke[d] a large concern on design requirements."

### B. The Underlying Lawsuit

12. A Second Amended Complaint was filed in the Underlying Lawsuit which named the Walsh Defendants and others. (A copy of the Second Amended Complaint is attached as Exhibit B.)

2576080v.1

13. The Second Amended Complaint alleges that on March 22, 2016, Nadia Assad was walking in the parking lot of the U.S. Postal Service Dominick V. Daniels Process & Distribution Center in Kearny, New Jersey ("DVD Parking Lot"). Id. at Count I, ¶ 1.

14. The Second Amended Complaint alleges that at the same time, Christopher Cook was operating a vehicle in a careless, reckless and negligent manner such that when he made a left turn he struck and fatally injured Nadia Assad. Id. at Count I, ¶¶ 2-3.

15. The Second Amended Complaint alleges that RWA is a professional architect and/or engineer responsible for the design and plans, engineering, inspections and/or approvals of the construction, oversight, contract implementation, renovation, repair and maintenance of the DVD Parking Lot pursuant to a February 25, 2014 contract awarded by the USPS to defendant Smith-Sondy Asphalt Construction Co., Inc. Id. at Count VIII, ¶ 2.

16. The Second Amended Complaint alleges that due to the negligence, recklessness, and carelessness of RWA, the architectural design and/or engineering plans, inspections and/or approvals of the construction, oversight, contract implementation, renovation, repair and maintenance of the DVD Parking Lot created unsafe and hazardous conditions due to blocked/limited lighting and failure to incorporate appropriate signage, lights, traffic signals, access and egress markings

and fixtures, pedestrian crossings and barriers, speed bumps, fencing, gates, bollards, guide rails/guard rails and other safety measures that protect pedestrians and vehicle operators from injury. Id. at Count VIII, ¶ 3.

17. Although Walsh is named in the caption as a defendant, the Second Amended Complaint does not assert direct allegations against Walsh.

18. Wesco has provided a defense pursuant to a reservation of rights.

## THE POLICY

19. Wesco issued an Architects & Engineers Professional Liability Insurance Policy, number ARA1255909-00 to RWA for period October 13, 2016 to October 13, 2017 (the "Policy"). (A copy of the Policy is attached as Exhibit C.)

20. The Policy is the first Architects & Engineers Professional Liability Insurance Policy issued by Wesco to RWA.

21. The Policy contains the following Insuring Agreement:

A. **1. PROFESSIONAL LIABILITY**

> We will pay on behalf of the Insured **damages** that the Insured becomes legally obligated to pay because of **claims** made against the Insured for **wrongful acts** arising out of the performance of **professional services** for others.

*   *   *

B. **CLAIMS-MADE AND REPORTED PROVISION**

> This insurance applies to a **wrongful act** only if all of the following conditions are satisfied:

1. the **wrongful act** took place on or after the **retroactive date;**

2. prior to the inception date of this policy, or the first such policy issued and continually renewed by us, no board member, director, executive officer, partner, managing member, principal, general counsel, or risk manager of the Insured knew or could reasonably have foreseen that any **wrongful act** might be expected to be the basis of a **claim;**

3. the **claim** arising out of the **wrongful act** is first made against any Insured during the **policy period;** and

4. the **claim** is reported in writing to us no later than 60 days after the end of the **policy period** or, if applicable, during an extended claims reporting period.

22. The Policy contains the following definitions:

C. **"Claim"** means a demand received by the Insured for money, **damages** or **professional services** alleging a **wrongful act** arising out of the performance of **professional services** or **contracting services.**

\*   \*   \*

G. **"Contracting services"** means any construction or construction management activity performed by an Insured under written contract, including any activity by any person or entity for whom the Insured is legally responsible.

V. **"Professional services"** means those services that the Insured is legally qualified to perform for others in the Insured's capacity as an architect, engineer, land surveyor, landscape architect, construction manager, scientist, technical consultant, interior designer, land planner, golf course designer or as otherwise defined by endorsement to the policy.

**Professional services** also includes customary technology services provided for others in the course of **professional**

6

      **services** described above. Such technology services means the design, development, programming, analysis, training, use, hosting, management, support and maintenance of any software, database or Insured or client's website. However, such technology services do not include the supplying of technology or electronic products or any services with respect to computer or telecommunications equipment or hardware.

AA.   **"Wrongful act"** means any actual or alleged negligent act, error or omission.

23.   The Policy contains the following provision regarding limits of liability:

A.   **Limits of Liability**

    The applicable limit of liability shown in the Declarations is the maximum we will pay regardless of the number of:

- Insureds,
- individuals or entities that make a **claim,** or
- **claims** made.

1.   Limit of Liability—Each Claim

$$* \quad * \quad *$$

    Two or more covered **claims** arising out of a single **wrongful act,** or any series of related **wrongful acts,** will be considered a single **claim.** The single **claim** will be subject to the "Limit of Liability—Each Claim" in effect at the time such **claim** was first made against the Insured. Only one deductible will apply to such single **claim.** If the first of such **claims** is made prior to the effective date of this policy, no coverage shall apply to any subsequent **claims** made during this **policy period** which are based upon the same or related **wrongful acts.**

## COUNT I
### (No Duty to Defend or Indemnify Walsh Defendants)

24. Wesco realleges and incorporate paragraphs 1 through 23 as if fully set forth herein.

25. The Professional Liability Insuring Agreement provides coverage for damages that the Insured becomes legally obligated to pay because of claims made against the Insured for wrongful acts arising out of the performance of professional services for others. The Policy applies to a wrongful act only if all of the following conditions are satisfied: (1) the wrongful act took place on or after the retroactive date; (2) prior to the inception date of the Policy, or the first such policy issued and continually renewed by Wesco, no board member, director, executive officer, partner, managing member, principal, general counsel, or risk manager of the Insured knew or could reasonably have foreseen that any wrongful act might be expected to be the basis of a claim; (3) the claim arising out of the wrongful act is first made against any Insured during the policy period; and (4) the claim is reported in writing to Wesco no later than 60 days after the end of the policy period or, if applicable, during an extended claims reporting period.

26. The Policy defines "claim" as a demand received by the Insured for money, damages or professional services alleging a wrongful act arising out of the performance of professional services or contracting services.

8

27. Wrongful act means any actual or alleged negligent act, error or omission.

28. The May 2, 2016 email advised the Walsh Defendants of omissions existing in the DVD Parking Lot designed by the Walsh Defendants and made a demand that the Walsh Defendants undertake professional services to correct design deficiencies.

29. The May 2, 2016 email from Kirk Bennett to Walsh constitutes a claim as defined by the Policy.

30. That "claim" was made prior to the policy period of the Policy.

31. The Policy provides that "[t]wo or more covered claims arising out of a single wrongful act, or any series of related wrongful acts, will be considered a single claim. The single **claim** will be subject to the "Limit of Liability—Each Claim" in effect at the time such **claim** was first made against the Insured. Only one deductible will apply to such single **claim.** If the first of such claims is made prior to the effective date of this policy, no coverage shall apply to any subsequent claims made during this policy period which are based upon the same or related wrongful acts."

32. The May 2, 2016 email and the Underlying Lawsuit arise out of RWA's alleged acts, errors or omissions in the design of the DVD Parking Lot.

2576080v.1

33. The May 2, 2016 email and the Underlying Lawsuit arise out of a single wrongful act, or a series of related wrongful acts, and therefore, the May 2, 2016 email and the Underlying Lawsuit are considered a single claim first made at the time of the May 2, 2016 email.

34. The policy period of the Policy is October 13, 2016 to October 13, 2017.

35. The Underlying Lawsuit is not a claim first made against the Walsh Defendants during the policy period. As the Underlying Lawsuit is not a claim first made during the policy period, the Policy does not provide coverage for the Underlying Lawsuit.

36. In the alternative, to the extent that the May 2, 2016 email does not constitute a claim, the Policy does not provide coverage as, prior to the Policy's October 13, 2016 inception date, the Walsh Defendants knew or could reasonably have foreseen that any wrongful acts might be expected to be the basis of a claim.

37. Wesco is entitled to withdraw from the defense of the Underlying Lawsuit.

**WHEREFORE**, Plaintiff, Wesco Insurance Company, requests that this Court enter judgment in its favor and against all Defendants declaring that Wesco Insurance Company has no duty to defend or indemnify Robert Walsh Associates, LLC or Robert Walsh in connection with the lawsuit filed by Samy Boutros, case

2576080v.1

no. HUD-L-1913-16, under Policy No. ARA1255909-00, and declaring that Wesco is entitled to withdraw from the defense provided under a reservation of rights, and for such other and further relief as the Court finds just and proper.

Respectfully submitted,

Dated: September 10, 2018
Florham Park, New Jersey

**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**

By: */s/Katherine E. Tammaro*
Katherine E. Tammaro, Esq.
200 Campus Drive
Florham Park, New Jersey 07932
Tel: (973) 624-0800
Fax: (973) 624-0808
katherine.tammaro@wilsonelser.com
*Attorneys for Plaintiff, WESCO Insurance Company*